IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

NIKLESH PAREKH,                                                                     Case No.:  6:18-cv-466-Orl-40TBS

    Plaintiff,

vs.

CBS CORPORATION d/b/a CBS NEWS,
and BRIAN CONYBEARE,

    Defendants.
_____/

**DEFENDANTS CBS CORPORATION AND BRIAN CONYBEARE'S
MOTION TO DISMISS AND SUPPORTING MEMORANDUM OF LAW**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants CBS Corporation d/b/a CBS News[1] ("CBS") and Brian Conybeare (collectively, "Defendants") move this Court to dismiss the Complaint in this action for failure to state a claim. In support of their motion, Defendants state:

**Introduction**

When Plaintiff found out the woman he was dating and lived with was pretending to have cancer so she could accept donations from well-meaning neighbors and friends to support her lifestyle rather than any medical treatment, Plaintiff contacted Defendant

---

[1] CBS Corporation is not a proper party to this lawsuit. CBS Corporation is the ultimate parent company of CBS Broadcasting Inc., owner and operator of WCBS-TV and its related website http://www.newyork.cbslocal.com. Compl. ¶ 14 (alleging the News Report was published on the newyork.cbslocal.com domain). CBS Corporation did not publish the News Report and is, thus, not a proper party to this lawsuit.

Conybeare and sat down for an interview about the woman's scam. Compl. ¶¶ 3, 12. The interview became part of an April 2, 2017 broadcast titled "Ex-Boyfriend Says Westchester Woman Lied About Having Cancer in Scam" (the "News Report"). *See* News Report attached as Exhibits A (video) and B (website content).[2] Plaintiff's now former girlfriend, and the woman accused of scamming donors out of money for fake cancer treatment, is Vedoutie Hoobraj a/k/a Shivonie Deokaran ("Deokaran").[3] In the News Report, Plaintiff says Deokaran never had cancer. Instead, he says that Deokaran "lied to [Plaintiff]…[his] friends, [his] family, her kids, [and his] kids" by soliciting funds under the guise of being a terminally ill cancer patient. News Report, p. 2. Plaintiff is quoted in the News Report as saying he "had no idea that that's what she was doing," and said he was a victim of Deokaran's elaborate plan, which included inventing a fake

---

[2] While matters outside of the four corners of the complaint ordinarily are not properly considered on a motion to dismiss, a court may properly consider the publication at issue in a defamation action without converting the motion into a motion for summary judgment because the News Report is referenced and specifically incorporated in Plaintiff's Complaint and is central to it. *See* Compl. ¶¶ 14, 49; *see also Hoffman-Pugh v. Ramsey*, 312 F. 3d 1222, 1225-26 (11th Cir. 2002) (publication that is basis of plaintiff's complaint may be considered by the court on motion to dismiss); *see also Fin. Sec. Assur., Inc. v. Stephens, Inc.*, 500 F. 3d 1276, 1284 (11th Cir. 2007) (court may consider document not attached to complaint when "a plaintiff refers to [that] document in its complaint, the document is central to its claim, its contents are not in dispute, and the defendant attaches the document to its motion to dismiss.").

[3] Deokaran pled guilty to wire fraud on January 12, 2018. Her sentencing hearing is scheduled to be held in the United States District Court for the Southern District of New York on July 13, 2018 at 11:30 am. *See U.S. v. Hoobraj*, Case No. 7:18-cr-00025-VB (S.D.N.Y. Aug. 10, 2017).

cancer doctor and providing Plaintiff with emails to prove to him her supposed diagnosis. *Id.* The News Report reports that Plaintiff "now knows the truth and their relationship is over."[4] *Id.* The News Report included images of Plaintiff and Deokaran during happier times, prior to when, in Plaintiff's words, Plaintiff's "whole life" turned "upside down" "[b]ecause of [Deokaran] and her lies." *Id.*

Plaintiff, who filed this lawsuit *pro se*, sued Defendants claiming the News Report portrayed him as "a scam or as a man who lied for money." Compl. ¶ 5. He seeks damages and injunctive relief for unspecified "Legal Claims". *See id.* ¶¶ 50 – 59; p. 14. Although unclear, it appears that Plaintiff alleges that statements contained in two passages of the News Report are defamatory:

> (1) Parekh was once Deokaran's staunchest supporter. *They suddenly moved to Florida last year when people started getting suspicious*, but Parekh said he now knows the truth and their relationship is over.

---

[4] The News Report also truthfully reports that the local police department was investigating both Plaintiff and Deokaran in connection with Deokaran's fake cancer claims. *See* News Report. Plaintiff has not challenged the veracity of this statement. Moreover, claiming that a person is under investigation does not imply that person has committed a crime. *See Glob. Relief Found. v. N.Y. Times Co.*, 390 F. 3d 973, 987 (7th Cir. 2004) (statement about legal ramifications from investigation could "not reasonably be interpreted as accusing plaintiff of a crime and thus was not actionable) (citing *Cartwright v. Garrison*, 113 Ill. App. 3d 536 (Ill. App. 2 Dist. 1983) (same)); *see also Campbell v. Citizens for an Honest Gov't, Inc.,* 255 F. 3d 560 (8th Cir. 2001) (assertion that plaintiff was implicated by eyewitnesses in murders and subsequent cover-up was not actionable even though plaintiff was not guilty of murder or cover-up). And in any event, the News Report, taken as a whole, decries any such implication that Plaintiff has committed a crime.

> (2)  When [Parekh] started asking questions, he said Deokaran invented a fake cancer doctor whose name resembled a real doctor at the Memorial Sloan Kettering Cancer Center – even sending typo-filled emails to prove her diagnosis. . . *Memorial Sloan Kettering Cancer Center confirmed that the doctor named in the emails never worked there, and in fact, no doctor by that name even has a license in the state of New York.*

*See* News Report (italicized words are those Plaintiff appears to take issue with in the Complaint); Compl. ¶¶ 3, 4, 12, 20, 28, 45, 53, 54. Plaintiff also takes exception to Defendants' use of photographs of Deokaran and Plaintiff together, though it is unclear what cause of action he is attempting to allege with respect to the photographs.[5]

Plaintiff's interpretation of the News Report cannot be reconciled with the content contained within it, and the Complaint should be dismissed for several reasons.[6] First, the

---

[5] Although Plaintiff states that the photographs that appear in the News Report are "false and scurrilous" and constitute "defamation and libel per se" (Compl. ¶ 18), he later asserts that the "Defendant…went out of his way to find pictures on his own of Plaintiff and [Deokaran]" (Compl. ¶ 56). It is unclear whether Plaintiff is attempting to assert a defamation claim related to these photographs, but even so, by his own admission, the Plaintiff has not asserted that there is anything false about the photographs and thus, any purported defamation claim regarding the photographs is not actionable. Further, when viewed as a whole, the photographs contribute to the overarching message of the Report, *i.e.* that Plaintiff had a relationship with Deokaran and has been a victim of her scam.

[6] As a threshold matter, a plaintiff seeking to sue a media defendant for defamation must provide pre-suit notice to the defendants. Fla. Stat. § 770.01, *et seq.* Notice is a jurisdictional condition precedent to filing suit. *See Carroll-Brufsky v. E.W. Scripps Co.,* No. 2:11-cv-500*,* 2012 U.S. Dist. LEXIS 49278, at *5 (M.D. Fla. Apr. 9, 2012) (noting that § 770.01, Fla. Stat. is a "jurisdictional condition precedent") *(*citing *Ross v. Gore*, 48 So. 2d 412, 415 (Fla. 1950) (same)); *see also Nelson v. Associated Press, Inc.*, 667 F. Supp. 1468, 1473-75 (S.D. Fla. 1987) (notice pursuant to § 770.01, Fla. Stat. is a condition precedent to maintaining an action); *Gifford v. Bruckner*, 565 So. 2d 887, 888 n.1 (Fla. 2d DCA 1990) (same). Plaintiff alleges that he made "multiple written requests

4

News Report, when taken as a whole, is not defamatory of Plaintiff. To the contrary, as explained above, the News Report repeatedly depicts Plaintiff as a victim of Deokaran's scheme and includes express denials by Plaintiff of any involvement in or knowledge of the scheme. Second, the challenged statements are not "of and concerning" the Plaintiff. Finally, this suit contravenes Florida's anti-SLAPP statute, and Defendants should be awarded their fees in having to defend it. The very pendency and ongoing expense of lawsuits like this one threatens to deter the media from reporting on issues of public controversy. Therefore, this case should be dismissed with prejudice at the earliest opportunity.

---

to have a retraction done by the Defendants" (Compl. ¶ 16) but does not attach those requests to the Complaint. Moreover, Plaintiff has not alleged compliance with conditions precedent to filing suit. *See* Fed. R. Civ. P. 9(c); *Moore v. AIA Direct, Inc.*, No. 8:15-cv-1885, 2016 U.S. Dist. LEXIS 8838, at *10-11 (M.D. Fla. Jan. 26, 2016) (dismissing complaint with leave to amend where plaintiff failed to allege compliance with necessary condition precedent); *Bayliss v. Cox Radio, Inc.*, No. 8:10-cv-1030, 2010 U.S. Dist. LEXIS 111758, at *8-12 (M.D. Fla. Oct. 13, 2010) ("plaintiff must generally allege compliance with section 770.01" and "failure to comply with a statutory condition precedent generally requires dismissal") (internal citations omitted); *United States v. Grant*, No. 00-8986, 2003 U.S. Dist. LEXIS 7281, at *5 (S.D. Fla. Mar. 31, 2003) ("failure to allege compliance with conditions precedent renders a complaint defective and subject to dismissal"). Plaintiff has failed to adequately allege compliance with Chapter 770, Florida Statutes, which alone requires dismissal. But because the Plaintiff's claims lack substantive merit, Defendants address the substance of the purported claims herein without waiver of the notice defect.

## **Argument**

The purpose of Rule 12(b)(6) is to permit the Court to terminate actions, such as this one, that are fatally flawed from the start, to spare the litigant and the Court the burdens of unnecessary pretrial and trial activity. When evaluating a motion to dismiss a court "must accept the allegations of the complaint as true and must construe the facts alleged in the light most favorable to the plaintiff." *Hunnings v. Texaco, Inc.*, 29 F. 3d 1480, 1484 (11th Cir. 1994). However, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

Plaintiff appears to be attempting to set forth a defamation claim.[7] Courts play a "prominent function" in defamation cases by determining as a matter of law if the complained of statements are reasonably capable of defamatory meaning or are otherwise not actionable at an early stage in the litigation, such as on motions to dismiss. *Byrd v.*

---

[7] Plaintiff also appears to allege a claim for intentional infliction of emotional distress (Compl. ¶¶ 44-47) based solely on the publication of the allegedly defamatory statements. Because any alleged harm flows directly from the publication of the allegedly defamatory statements, this claim, if it has been asserted, must be dismissed under the single action rule. *See Fridovich v. Fridovich*, 598 So. 2d 65, 69 (Fla. 1992) (no separate cause of action for intentional infliction of emotional distress exists where the factual basis for the intentional infliction claim is the publication of allegedly defamatory statements); *Kinsman v. Winston*, No. 6:15-cv-696, 2015 WL 12839267, at *5 (M.D. Fla. Sept. 15, 2015) (dismissing tort counts based on allegedly false and defamatory statements because "single action rule prohibits defamation claims from being re-cast as additional, separate torts, e.g., intentional infliction of emotional distress, if all the claims arise from the same defamatory publication"); *Trujillo v. Banco Central Del Ecuador*, 17 F. Supp. 2d 1340 (S.D. Fla. 1998) (dismissing intentional infliction count because "[a]n attempt to state a claim for intentional infliction of emotional distress based on the same publication as the defamation count must fail").

*Hustler Magazine, Inc.*, 433 So. 2d 593, 595 (Fla. 4th DCA 1983) (citing *Wolfson v. Kirk*, 273 So. 2d 774, 778 (Fla. 4th DCA 1973)); *Vanmoor v. Fox News Network, LLC*, 34 Media L. Rep. 2022 (Fla. 17th Jud. Cir. May 26, 2006) (dismissing action for lack of defamatory meaning and protection by fair report privilege). If the action is not sufficiently pled, the Court is justified in dismissing it. *Wolfson*, 273 So. 2d at 778; *see also Smith v. Cuban Am. Nat'l Found.*, 731 So. 2d 702, 704 (Fla. 3d DCA 1999) (if a statement is not capable of defamatory meaning, it should not be submitted to the jury). Pretrial disposition is especially appropriate in defamation cases because of "the chilling effect" these cases have on First Amendment rights. *Karp v. Miami Herald Publ'g Co.*, 359 So. 2d 580, 581 (Fla. 3d DCA 1978); *see also Stewart v. Sun-Sentinel Co.*, 695 So. 2d 360, 363 (Fla. 4th DCA 1997).

      Moreover, the Florida Legislature recently amended the Strategic Lawsuits Against Public Participation (known as "SLAPP" lawsuits) statute as an attempt to deter people from filing exactly this type of lawsuit: a meritless complaint that targets the free speech rights of journalists. § 768.795, Fla. Stat. To facilitate the "expeditious resolution" of such lawsuits, Florida's anti-SLAPP law provides for mandatory fee-shifting in the event a lawsuit fails to survive any dispositive motion. *Id.* at § 768.295(4). This is exactly the type of "SLAPP" lawsuit the law was designed to address, and it should be expeditiously dismissed.

### I.    *The News Report is not defamatory as a matter of law.*

Plaintiff's Complaint must be dismissed because the News Report is not defamatory as a matter of law. To properly state a claim for defamation under Florida law, Plaintiff must plead and prove the following elements: (1) a false and defamatory statement of and concerning another; (2) an unprivileged publication to a third party; (3) fault on the part of the publisher; and (4) damages. *Mile Marker, Inc. v. Petersen Publ'g, L.L.C.*, 811 So. 2d 841, 845 (Fla. 4th DCA 2002) (citing *Thomas v. Jacksonville Television, Inc.*, 699 So. 2d 800 (Fla. 1st DCA 1997)). Fundamental to this Court's role in determining whether dismissal is appropriate in a defamation case is its evaluation of whether the News Report is reasonably capable of defamatory meaning. *See Rubin v. U.S. News & World Rep., Inc.*, 271 F. 3d 1305, 1306 (11th Cir. 2001) ("where the court finds that a communication could not possibly have a defamatory or harmful effect, the court is justified in dismissing the complaint for failure to state a cause of action") (internal quotations omitted). A statement is defamatory if "it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Thomas*, 699 So. 2d at 803. Plaintiff's defamation claim fails as a matter of law because the statements complained of are not defamatory.

It is well-settled in Florida that a court must evaluate an allegedly defamatory publication not by "extremes, but as the common mind would naturally understand it." *McCormick v. Miami Herald Publ'g Co.,* 139 So. 2d 197, 200 (Fla. 2d DCA 1962);

*Cooper v. Miami Herald Publ'g Co.*, 31 So. 2d 382, 384 (Fla. 1947). In other words, "the statement should be considered in its natural sense without a forced or strained construction." *Byrd*, 433 So. 2d at 595; *see also Smith*, 731 So. 2d at 704.

"There is no way to determine the 'gist' or 'sting' of the publication in the mind of the average [reader] without examining the statement in context." *Smith*, 731 So. 2d at 706. Accordingly, each publication alleged to be defamatory must be viewed in its totality; that is, the Court must consider all the words and pictures used and not just isolated words or phrases. *Id.* (citations omitted). As the *Byrd* Court explained:

> When words and pictures are presented together, each is an important element of what, *in toto,* constitutes the publication. Articles are to be considered with their illustrations; pictures are to be viewed with their captions; stories are to be read with their headlines.

*Byrd*, 433 So. 2d at 595 (citations omitted). Courts are not to take a scalpel to allegedly defamatory publications. *McCormick*, 139 So. 2d at 200; *Cooper*, 31 So. 2d at 384; *Byrd*, 433 So. 2d at 595; *Smith*, 731 So. 2d at 704. In short, the court must consider the context in which the statements were published, the author's use of cautionary terms, and all of the circumstances surrounding the publication, including the medium of expression and its audience. *Hay v. Independent Newspapers, Inc.*, 450 So. 2d 293, 295 (Fla. 2d DCA 1984). "Where the court finds that a communication could not possibly have a defamatory or harmful effect, the court is justified in either dismissing the complaint for failure to state a cause of action or in granting a directed verdict at the proof stage." *Wolfson*, 273 So. 2d at 778.

Plaintiff claims the News Report portrays him as a "dishonest man" who "scams people for money" (Compl. ¶ 34) and charges him "with engaging in criminal conduct and/or other conduct that would tend to injure the Plaintiff in his trade or business, namely as a services company" (Compl. ¶ 35). But it is evident on the face of the News Report that what is portrayed is exactly the opposite of Plaintiff's allegations. The News Report is replete with Plaintiff's own expression of disappointment and outrage with Deokaran. The News Report depicts Plaintiff as a victim of Deokaran, who turned his "whole life [] upside down" due to her lies about having terminal cancer to solicit funds from well-meaning individuals. *See* News Report, p. 2. The News Report reports that Plaintiff has "nothing to hide" and that he had "no idea [Deokaran] was shaving her head [to pretend she had cancer]." *Id.* It further explains that when Plaintiff became suspicious, Deokaran "invented a fake cancer doctor" and even showed Plaintiff emails to "prove her diagnosis." *Id.* While the News Report truthfully points out the local police are investigating the couple in connection with the scam, at no point does the News Report imply or state that Plaintiff was involved in the scam, that he lied to assist Deokaran in soliciting funds, or that he engaged in any criminal conduct. Thus, taken as a whole, the News Report conveys no defamatory meaning or suggestion.

To be sure, the words used in conjunction with the specifically challenged statements belie any suggestion by Plaintiff that they accuse him of a crime or dishonesty. Plaintiff claims that statements concerning his move to Florida defame him.

10

Compl. ¶ 4, 12, 23, 29, 45, 54.[8] The complete statement reads: "[Plaintiff] was once Deokaran's staunchest supporter. They suddenly moved to Florida last year when people started getting suspicious, but [Plaintiff] said he now knows the truth and the relationship is over." *See* News Report, p. 2. Reasonably understood in its natural sense, as the common mind would understand this passage, the statement simply does not suggest that Plaintiff was the reason for the community suspicion or did anything nefarious in connection with the move. Rather, the logical conclusion from this passage is exactly what it says: a woman lied to her boyfriend, family, friends, and community about being terminally ill in an effort to solicit funds, and Plaintiff was one of these victims of her scheme.[9]

The statement at issue acknowledges that Plaintiff was Deokaran's supporter, and moved to Florida with her, until he learned the truth and ended the relationship. The statements contained in the News Report simply are not defamatory of Plaintiff as a matter of law, and, therefore, the Complaint should be dismissed. Moreover, because amendment would be futile, the Complaint should be dismissed with prejudice.

---

[8] Plaintiff misstates what the News Report said in many of these paragraphs. *See* News Report.

[9] Indeed, the Sealed Complaint prepared by the FBI in Deokaran's criminal case specifically states that "when pressed by local law enforcement and others to substantiate [Deokaran's] claims in late 2015 and early 2016, [Deokaran] presented forged medical records and moved from Westchester County to Florida" taking Plaintiff with her. *See* Ex. A to Complaint, ¶ 5.

## II. The Statement concerning the doctor is not "of and concerning" the Plaintiff.

Plaintiff likewise takes repeated issue with Defendants' mention of the doctor whom Deokaran falsely claimed was treating her. Compl. ¶¶ 3, 12, 13, 20, 21, 27, 28, 45, 52, 53. But at the core of the First Amendment freedom of expression is the fundamental proposition that there can be no defamation when the statement complained of did not directly or by clear implication concern the plaintiff. *See McIver v. Tallahassee Democrat, Inc.*, 489 So. 2d 793, 794 (Fla. 1st DCA 1986) (citing *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 277 (1964); *see also Mile Marker*, 811 So. 2d at 845 (to properly state a claim for defamation, the plaintiff must demonstrate that the statement can reasonably be construed as containing a false and defamatory fact "of and concerning" the plaintiff). Accordingly, to be actionable the statement at issue must be "specifically directed at the plaintiff." *See Rosenblatt v. Baer,* 383 U.S. 75, 81 (1966) (of and concerning requirement is constitutionally-mandated); *see also Baker v. McDonald's Corp.*, 686 F. Supp. 1474, 1484 (S.D. Fla. 1987) ("the plaintiff must show that the defendant made a false statement of fact of or concerning the plaintiff"), *aff'd*, 865 F. 2d 1272 (11th Cir. 1988). Simply put, to state a claim for defamation, the challenged words must refer "solely or especially" to the Plaintiff. *Miller v. Twentieth Century Fox Int'l Corp.*, 29 Media L. Rep. 1087, 1091 (M.D. Fla. 1990).

The statement regarding the Memorial Sloan Kettering doctor has nothing at all to do with Plaintiff. The complained of statement in the News Report reads: "Memorial

Sloan Kettering Cancer Center confirmed that the doctor named in the emails never worked there, and in fact, no doctor by that name even has a license in the State of New York." *See* News Report, p. 2. This statement cannot reasonably be construed to be about the Plaintiff, directed at Plaintiff, nor attaching any implication to Plaintiff. Accordingly, Plaintiff cannot base his defamation claim against Defendants on statements made about another individual, and the Complaint should be dismissed with prejudice.

### III. Defendants are entitled to fees and costs pursuant to Florida's anti-SLAPP law.

Florida's anti-SLAPP law "provides a substantive right to immunity from abusive lawsuits that suppress First Amendment rights." *Rosenthal v. Council on Am.-Islamic Relations, Fla., Inc.*, 45 Media L. Rep. 2664, 2667 (Fla. 17th Jud. Cir. Ct. Nov. 8, 2017). To that end, the law prohibits anyone from bringing a lawsuit (a) that is "without merit," and (b) because the defendant "has exercised the constitutional right of free speech in connection with a public issue," which the statute defines as any written or oral statement "made in or in connection with a . . . news report, or other similar work." § 768.295(2)(a), (3), Fla. Stat. Florida federal courts have recognized the applicability of anti-SLAPP statutes. *See Tobinick v. Novella*, 108 F. Supp. 3d 1299, 1305 (S.D. Fla. 2015) (recognizing that the majority of circuit courts have found anti-SLAPP statutes permissible and finding California anti-SLAPP statute "protects substantive rights and thus applies in federal court"), *aff'd*, 848 F. 3d 935 (11th Cir. 2017); *see also Davis v. McKenzie,* No. 16-62499*,* 2017 U.S. Dist. LEXIS 183519, at *7-8 (S.D. Fla. Nov. 3,

13

2017) (granting Defendant's summary judgment motion pursuant to Florida's anti-SLAPP statute). Florida prioritizes the "expeditious resolution" of anti-SLAPP motions and instructs that "[t]he court shall award the prevailing party reasonable attorneys' fees and costs incurred in connection with a claim that an action was filed in violation of this section." § 768.295(4), Fla. Stat. "Effective anti-SLAPP statutes" exist to "make it easier and cheaper to terminate such lawsuits at early stages." Samuel Morley, *Florida's Expanded Anti-SLAPP Law: More Protection for Targeted Speakers*, 90 Fla. B.J. 17-18 (Nov. 2016).

This case meets both requirements of Florida's anti-SLAPP law. First, as detailed above, Plaintiff's lawsuit is "without merit." § 768.295(3), Fla. Stat. Specifically, the allegations in the Complaint do not support a defamation claim as a matter of law because the challenged statements are not defamatory and/or are not "of and concerning" the Plaintiff. Second, this lawsuit arises out of Defendants' exercise of their "constitutional right of free speech in connection with a public issue," *id.*, because the challenged News Report constitutes a "written or oral statement that is protected under applicable law" and was "made in or in connection with" an "audiovisual work . . . news report, or other similar work." *Id.* § 768.295(2)(a); *see also Rosenthal*, 45 Media L. Rep. at 2668 (noting that Florida's anti-SLAPP law is broader than most and "includes any protected statement made in a news report"). Under the anti-SLAPP law, an award of reasonable attorneys' fees and costs is mandatory in these circumstances. *Id.* § 768.295(4).

## Conclusion

The News Report, taken as whole and in its natural sense, as this Court must, is not defamatory of Plaintiff. Moreover, the statements regarding the Memorial Sloan Kettering doctor are not of and concerning Plaintiff. Additionally, Plaintiff has not stated any cause of action with respect to the use of photographs of Deokaran and he in the News Report. Plaintiff has failed to state any cause of action against the Defendants as a matter of law. Furthermore, because the News Report is not defamatory, any amendment would be futile. Defendants, therefore, move this Court to dismiss the action with prejudice.

WHEREFORE, Defendants respectfully request this Court dismiss Plaintiff's Complaint with prejudice and award Defendants their attorney's fees and costs pursuant to Section 768.295, Florida Statutes.

Dated: June 6, 2018.

    Respectfully Submitted,

SHULLMAN FUGATE PLLC
*/s/ Deanna K. Shullman*
Deanna K. Shullman
Florida Bar No. 514462
Giselle M. Girones
Florida Bar No. 124373
2101 Vista Parkway, Suite 4006
West Palm Beach, FL 33411
Tel: (561) 429-3619
dshullman@shullmanfugate.com
ggirones@shullmanfugate.com
*Attorneys for Defendant CBS Corporation*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Motion was served via U.S. Mail and Electronic Mail on June 6, 2018 on the individual in the below service list.

*/s/ Deanna K. Shullman*
Deanna K. Shullman

## SERVICE LIST

Plaintiff, *pro se*:

Nikhlesh Parekh
samosanyc@gmail.com
4683 Summeroak Street, Suite 2105
Orlando, FL 23835
Telephone: 914-305-0338