IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

NIKLESH PAREKH,  Case No.: 6:18-cv-466-Orl-40TBS

  Plaintiff,

vs.

CBS CORPORATION d/b/a CBS NEWS
and BRIAN CONYBEARE,

  Defendants.
_____/

## DEFENDANTS' MOTION TO COMPEL FBI AUTHORIZATION, OR IN THE ALTERNATIVE, ORDER OF PRECLUSION AND INCORPORATED MEMORANDUM OF LAW

Pursuant to Federal Rule of Civil Procedure 37 and Local Rules 3.01 and 3.04, Defendants CBS Corporation d/b/a CBS News ("CBS") and Brian Conybeare (collectively, "Defendants") respectfully move this Court for an Order compelling Plaintiff Niklesh Parekh ("Plaintiff") to provide an executed Department of Justice Form DOJ-361, Certification of Identity and Authorization to Release Information to Another Person (the "Authorization"), to Defendants in order to obtain records related to the FBI's investigation of Vedoutie Hoobraj a/k/a Shivonie Deokaran, the cancer scam, and Plaintiff, matters which are central to this case. Defendants require the Authorization to obtain those records, and Plaintiff has refused, without any justification, to provide it.

**Background**

This matter stems from an April 2, 2017 broadcast titled "Ex-Boyfriend Says Westchester Woman Lied About Having Cancer in Scam" ("the News Report"). The basic facts of the News Report are set forth in Defendants' earlier motions, including Defendants' pending dispositive Motion to Dismiss (D.E. 19), and they are repeated here only insofar as necessary to provide context for this Motion. The News Report relays accusations against Plaintiff's former girlfriend, Vedoutie Hoobraj a/k/a Shivonie Deokaran ("Deokaran"), to the effect that she solicited donations from members of the public under the guise of being a terminally ill cancer patient. In the News Report, Plaintiff claims that he, too, was fooled by Deokaran. Despite having initiated communications with the media, Plaintiff became dissatisfied with the attention received in connection with the cancer scam incident and initiated the instant action. In his Complaint, Plaintiff claims that the News Report portrays him as "a scam or as a man who lied for money." Compl. ¶ 5. Plaintiff appears to allege that two statements contained in the News Report are defamatory. *Id.* at ¶¶ 3, 4, 12, 20, 28, 45, 53, 54. Those statements concern whether Plaintiff and Deokaran moved to Florida when people in the community began to get suspicious, and a statement concerning the identity of a cancer doctor Deokaran concocted. *Id.*

Throughout the instant proceedings, Plaintiff has maintained that he was the one who contacted and cooperated with the Federal Bureau of Investigation ("FBI") to investigate the fraud perpetuated by Deokaran. Indeed, Plaintiff claims he was "the main

witness" and "work[ed] with the FBI" in Deokaran's criminal case (Compl. ¶ 11) and continuously refers to the copy of the unsealed complaint prepared by the FBI in Deokaran's criminal case, attached as Exhibit A to his Complaint. Compl., Ex. A; ¶¶ 12-13, 16, 21, 23, 27-28, 53-54. Deokaran pled guilty to wire fraud and was sentenced to twenty-four months imprisonment followed by three years of supervised release and was also ordered to pay $47,74.20 in restitution. *See U.S. v. Hoobraj*, Case No. 7:18-cr-00025-VB (S.D.N.Y. July 13, 2018).

Undoubtedly, Plaintiff has made statements to the federal government setting forth his contentions with respect to the cancer scam and his involvement therein. *Id.* ¶ 23 ("Plaintiff was asked this question by the local and federal authorities…this statement of Plaintiff was given to authorities in a sworn statement under oath."); *see also* ¶ 55. Plaintiff's statements under oath to the FBI about the central facts at issue in this action, and the FBI's investigation in response thereto, are unquestionably relevant evidence in connection with the claims asserted by Plaintiff. Moreover, the News Report complained of by Plaintiff reports on the fraud that was the subject of the FBI's investigation.

In light of the centrality of such evidence and pursuant to the Freedom of Information Act, 5 U.S.C. § 522, *et. seq.*, Defendants intend to seek from the FBI and United States Attorneys' Office "all documents relating to an investigation, or request for an investigation, regarding wire fraud and/or allegations of fraudulent cancer fundraisers and solicitations by Vedoutie Hoobraj a/k/a Shivonie Deokaran, including but not limited to all communications with, investigation of, and sworn statements by Niklesh Parekh,

reports, investigative files, interviews, witness statements, photographs, and videos." However, Defendants understand that the government will not provide responsive materials unless Defendants submit a signed Form DOJ-361 Authorization executed by Plaintiff. Accordingly, Defendants requested that Plaintiff sign the required Authorization. *See* Exhibit 1, attaching a true and correct copy of the correspondence and form submitted to Plaintiff for signature. Plaintiff refused to sign the Authorization.

Plaintiff first indicated that the information *he* needs is available online and attached as an Exhibit to the Complaint (presumably the unsealed complaint by the FBI) and asserted any request by Defendants to the federal government irrelevant. But even after counsel further explained to Plaintiff the purpose of the Authorization form and the type of information to be sought, Plaintiff declined to execute the waiver and advised the undersigned to seek this Court's intervention. In a last attempt to avoid the need for court intervention, the undersigned conferred with Plaintiff via telephone on September 18, 2018. During the conversation, the undersigned again explained why the Authorization was needed, the information that would be sought from the government, and the highly probative value of same. Plaintiff refused to cooperate, indicating he "was not signing anything" and that the Court would not order him "to sign anything" because "this is a defamation case." Defendants now ask this Court to direct Plaintiff to provide a completed and executed Form DOJ-361 Authorization to facilitate Defendants' request for plainly relevant, non-privileged information.

**Argument**

*I.     Plaintiff should be compelled to execute the Authorization.*

The discovery rules contemplate broad pre-trial discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). By commencing this action and alleging Defendants have misreported on the circumstances behind Deokaran's cancer scam at the time she was Plaintiff's live-in girlfriend, Plaintiff has placed the FBI's and U.S. Attorneys' files concerning the incident squarely at issue. It is well within the purview of a court to direct a party to provide a signed records release, including much more intrusive circumstances than here, such as when the requested records contain confidential medical information. *See e.g., Zaffis v. City of Altamonte Springs*, No. 6:06-cv-385-Orl-31DAB, 2007 U.S. Dist. LEXIS 44588, at *3-4 (M.D. Fla. June 20, 2007) (court found defendants were entitled to discovery of mental health records and ordered plaintiff to provide a signed HIPAA release); *Milsap v. Cornerstone Residential Mgmt.*, No. 05-60033, 2006 U.S. Dist. LEXIS 102327, at *8-9 (S.D. Fla. Aug. 25, 2006) (court ordered plaintiff to provide defendants with signed medical record release where records were relevant to emotional distress damages allegedly suffered); *Smith v. Atlanta Postal Credit Union*, No. 1:07-cv-1833, 2008 U.S. Dist. LEXIS 128062, at *3-4 (N.D. Ga. July 1, 2008) (court ordered plaintiff to execute release of medical records where records were indisputably relevant to the allegations of complaint).

Indeed, in *Smith*, the plaintiff objected to the records release because the defendant already had a form from her doctor indicating her diagnosis. *Id.* at *2. Unconvinced, the court not only approved the order but also emphasized the broad scope of discovery in federal courts, ensuring that the requesting party receives full and complete information. *Id.* at *4 (finding that defendant was entitled "to discover more than just this one form regarding [p]laintiff's medical condition"). The court's reasoning applies with greater force here. Plaintiff bases his allegations on government documents attached to his Complaint that he alleges demonstrate the defamatory nature of Defendants' statements. Defendants are entitled to discover more than just this one document.

The information Defendants seek from the federal government about its investigation of the cancer scam at the heart of this case is not only indisputably relevant to the core facts at issue, but it is also critical to Defendants' preparation of their defense. Defendants have been accused of falsely reporting on a federal criminal investigation and are entitled to obtain records related thereto in preparation of their defense against Plaintiff's allegations. Plaintiff's Complaint and his conduct in this action make clear he intends to rely on statements he provided to the government and its investigation to prove that Defendants' News Report contains false and/or defamatory information that damaged his reputation. At the same time, however, Plaintiff has taken the position that the single document chosen by him and attached to his complaint (the FBI complaint) is all Defendants are entitled to discover about the investigation they purportedly wrongly

reported on.  Plaintiff's position is untenable.  Plaintiff should be compelled to execute the Authorization so that Defendants can conduct proper discovery from federal agencies in possession of relevant and material information in this suit.

## II. *Preclusion of evidence concerning the cancer scam incident is warranted if Plaintiff fails to execute the Authorization.*

If Plaintiff fails to provide the signed Authorization (thereby precluding Defendants from obtaining the requested records), Plaintiff should be prohibited from presenting any evidence concerning the circumstances behind the cancer scam, including the investigation of same and any statements or complaints he may have made to law-enforcement agencies.  This preclusion is warranted and proper.

The records Defendants seek, as explained above, are highly relevant because Plaintiff himself has placed the contents of the government's file at issue.  In fact, a central theme in his statements has been that he worked with the FBI to investigate and ultimately prosecute Deokaran, and he has asserted that he has provided the FBI with sworn statements.  Plaintiff should not be permitted to offer such evidence and/or testimony while at the same time seeking to shield discovery of law enforcement records, including his own statements, regarding the precise facts that are central to this case.  *See Strong v. Geico Gen. Ins. Co.*, No. 8:16-cv-1757, 2017 U.S. Dist. LEXIS 36674, at *10-11 (M.D. Fla. Mar. 15, 2017) ("plaintiff cannot hide behind the shield of privilege to prevent defendant from effectively challenging plaintiff's evidence and allegations."); *Bradfield v. Mid-Continent Cas. Co.*, 15 F. Supp. 3d 1253, 1257 (M.D. Fla. 2014)

("under the sword and shield doctrine, a party who raises a claim that will necessarily require proof by way of a privileged communication cannot insist that the communication is privileged.") (quoting *AllState Ins. Co. v. Levesque*, 263 F.R.D. 663, 667 (M.D. Fla. 2010)).

Principles of basic fairness, therefore, dictate that Plaintiff should be precluded from referencing the investigation, his communications with the FBI or prosecuting agencies, or any facts learned from these agencies through those communications, while at the same time obstructing Defendants' efforts to access those records. The Court should not permit Plaintiff to conceal highly relevant information about material facts from Defendants, while he is asserting claims arising out of his version of these very facts. If Plaintiff fails to execute the Authorization, he should be precluded from offering evidence concerning the scope of substance of that investigation.

### III. *Defendants are entitled to their fees for this Motion.*

As discussed above, Defendants have demonstrated that despite their multiple attempts to meet and confer in good faith and explain to Plaintiff the importance of the records sought, the need for the Authorization, and the relevance of same, Plaintiff unjustifiably refuses to do so and in fact urged Defendants to seek court intervention rather than discuss the matter. The Federal Rules of Civil Procedure require "the party…whose conduct necessitated the motion…pay the movant's reasonable expenses incurred in making the motion, including attorney's fees" where the motion is granted, or the requested action is provided after the filing of the motion. Fed. R. Civ. P.

37(a)(5)(A). As detailed above, Plaintiff's reasons for declining to complete the Authorization are unjustified, and the Rules favorably contemplate awarding fees under such circumstances to "deter the abuse implicit in carrying or forcing a discovery dispute to court." Fed. R. Civ. P. 37(a)(5) (Advisory Comm. Notes). Accordingly, Defendants should be awarded their reasonable expenses, including fees, incurred in bringing this Motion.

## Conclusion

For the foregoing reasons, Defendants respectfully request that their Motion to Compel be granted, that Plaintiff be ordered to provide a completed, executed Form DOJ-361 Authorization to Defendants within three business days of entry of that Order, that the Court hold that Plaintiff's failure to execute the Authorization shall result in preclusion, that Defendants be awarded their reasonable costs and attorneys' fees incurred in connection with bringing this Motion, and that the Court grant such further relief as it deems appropriate.

## Local Rule 3.01(g) Certification

Pursuant to Local Rule 3.01(g), and as detailed above, the undersigned counsel certifies that she contacted Plaintiff on September 17 and September 18, 2018, regarding the execution of the Authorization in an effort to secure the discovery at issue without court action, but Plaintiff declines to do so.

Dated: September 21, 2018

SHULLMAN FUGATE PLLC
*/s/ Deanna K. Shullman*
Deanna K. Shullman
Florida Bar No. 0514462
Giselle M. Girones
Florida Bar No. 124373
2101 Vista Parkway, Suite 4006
West Palm Beach, FL  33411
Tel: (561) 429-3619
dshullman@shullmanfugate.com
ggirones@shullmanfugate.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Notice was served via U.S. Mail and Electronic Mail on September 21, 2018 on the individual in the below service list.

*/s/ Deanna K. Shullman*
Deanna K. Shullman

## SERVICE LIST

Plaintiff, *pro se*:

Niklesh Parekh
samosanyc@gmail.com
4683 Summeroak Street, Suite 2105
Orlando, FL 32835
Telephone:  914-305-0338

10