UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

NIKLESH PAREKH,

        Plaintiff,

v.                                                                      Case No: 6:18-cv-466-Orl-40TBS

CBS CORPORATION,
and BRIAN CONYBEARE,

        Defendants.
                               /

## ORDER

This cause comes before the Court without oral argument on Defendant CBS Corporation and Brian Conybeare's Motion to Dismiss and Supporting Memorandum of Law (Doc. 19 (the "**Motion**")), filed June 6, 2018 and Plaintiff's Response in Opposition (Doc. 29), filed July 19, 2018. With briefing complete, the Motion is ripe.

**I.   BACKGROUND**[1]

In 2016, *pro se* Plaintiff, Niklesh Parekh ("**Parekh**") discovered that his former girlfriend, Vedoutie Hoobraj a/k/a Shivonie Deokaran ("**Deokaran**") was pretending to have cancer and accepting donations from the local community. (Doc. 1, ¶ 10). After making this discovery, Parekh reported Deokaran to the local authorities. (*Id.* ¶ 11). Parekh then contacted CBS Corporation and Brian Conybeare (collectively "**Defendants**") and provided them with an hour-long "exclusive interview" regarding Deokaran's scam. (*Id.* ¶ 30).

---

[1]  This account of the facts is taken from the Complaint (Doc. 1), the factual allegations of which the Court accepts as true at the motion to dismiss stage. *See Williams v. Bd. of Regents*, 477 F.3d 1282, 1291 (11th Cir. 2007).

According to Parekh, after his interview, Defendants published a defamatory news report ("**News Report**") that "portray[s] him as a scam or as a man who lied for money." (*Id.* ¶ 5). In addition to incorporating portions of Parekh's interview and photos of Parekh and Deokaran posing together, the News Report, titled "Ex-Boyfriend Says Westchester Woman Lied About Having Cancer in Scam" states in relevant part:

> New allegations surfaced Sunday night that a Westchester County mother faked having cancer to con people out of thousands of dollars.
>
> As CBS2's Brian Conybeare reported exclusively, the woman's former boyfriend is now coming forward to make the s[t]unning admission – claiming he had no idea she made the whole thing up.
>
> With her bald head, Shivonie Deokaran certainly looked like a cancer patient in 2015. Generous people in the Westchester County village of Ardsley – using GoFundMe pages and a spaghetti dinner at the local firehouse – raised more than $60,000 to help the single mother of two teenage boys when she claimed she had only 18 months to live because of leukemia and a tumor.
>
> But now, in an exclusive interview, Nikhlesh Parekh – Deokaran's longtime boyfriend – admitted it was all a scam.
>
> "She has never had cancer," Parekh said. "Shivonie has lied to me; has lied to my friends, my family, her kids, my kids!"
>
> Parekh was once Deokaran's staunchest supporter. *They suddenly moved to Florida last year when people started getting suspicious*, but Parekh said he now knows the truth and their relationship is over.
>
> "She's been shaving her head, she's been shaving her eyebrows, and I had no idea that that's what she was doing," Parekh said.
>
> Despite Parekh's claim he was fooled, Ardsley police confirmed they are investigating both him and Deokaran in the cancer fraud probe.

> \* \* \*
>
> Parekh said he has nothing to hide. When he started asking questions, he said Deokaran invented a fake cancer doctor whose name resembled a real doctor at the Memorial Sloan Kettering Cancer Center – even sending typo-filled emails to prove her diagnosis.
>
> "There is absolutely no proof," Parekh said. "Because of Shivonie and her lies, my whole life is upside down."
>
> \* \* \*
>
> *Memorial Sloan Kettering Cancer Center confirmed that the doctor named in the emails never worked there*, and in fact, no doctor by that name even has a license in the state of New York.

(Doc. 19-2) (emphasis added).

Parekh requested that Defendants retract the News Report, but they refused. (Doc. 1, ¶ 16). Consequently, Parekh filed suit against Defendants on March 28, 2018, asserting claims for defamation *per se* and intentional infliction of emotional distress ("**IIED**"). (Doc. 1, ¶¶ 44–47, 50–59).

Parekh maintains that the News Report "falsely, maliciously and/or with reckless disregard for the truth" stated that: (1) "[Parekh and Deokaran] suddenly moved to Florida last year when people started getting suspicious" ("**First Statement**"); and (2) "Memorial Sloan Kettering Cancer Center confirmed that the doctor named in [Deokaran's] emails never worked there, and in fact, no doctor by that name even has a license in the state of New York." ("**Second Statement**") (*Id.* ¶ 12). Parekh claims that he provided Defendants with "facts showing otherwise." (*Id.* ¶ 4). Specifically, Parekh avers that he told Defendants that "the reason [he and Deokaran] moved to Florida was not because of any suspicion within the community but rather that [Deokaran] stated she was given 18 months to live and New York was too cold for her and [they] had to move to Florida." (*Id.*

¶ 23). Parekh also states that "existence of [the] doctor is a fact and has been verified by the [FBI], who were given the same information as to Defendants." (*Id.* ¶ 21).

Defendants move to dismiss the Complaint and seek fees and costs incurred in defending this suit pursuant to Florida's anti-SLAPP (Strategic Lawsuits Against Public Participation) statute, Fla. Stat. § 768.295. (Doc. 19).

## II.   STANDARD OF REVIEW

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(1). Thus, in order to survive a motion to dismiss made pursuant to Rule 12(b)(6), the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

Though a complaint need not contain detailed factual allegations, mere legal conclusions or recitation of the elements of a claim are not enough. *Twombly*, 550 U.S. at 555. Moreover, courts are "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. Courts must also view the complaint in the light most favorable to the plaintiff and must resolve any doubts as to the sufficiency of the complaint in the plaintiff's favor. *Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1483 (11th Cir. 1994) (per curiam). In sum, courts must (1) ignore conclusory allegations, bald legal assertions, and

formulaic recitations of the elements of a claim; (2) accept well-pled factual allegations as true; and (3) view well-pled allegations in the light most favorable to the plaintiff. *Iqbal*, 556 U.S. at 679.

Furthermore, the Court has a duty to liberally construe a *pro se* plaintiff's filings and to afford greater leeway in alleging a claim for relief than what is given to licensed attorneys. *Tennyson v. ASCAP*, 477 F. App'x 608, 609–10 (11th Cir. 2012) (per curiam).[2] Nevertheless, "a *pro se* party must follow the rules of procedure and evidence, and the district court has no duty to act as [a *pro se* party's] lawyer." *Id.* at 610 (internal quotation marks omitted). Moreover, the Court may not "rewrite an otherwise deficient pleading in order to sustain an action" for a *pro se* party. *GJR Invs., Inc. v. Cty. of Escambia*, 132 F.3d 1359, 1369 (11th Cir. 1998), *overruled on other grounds as recognized by Randall v. Scott*, 610 F.3d 701 (11th Cir. 2010).

## III. DISCUSSION

### A. Defamation

Defendants move to dismiss Parekh's defamation claim. Defendants argue that Parekh's claim fails as a matter of law because (1) the Statements are not defamatory, and (2) the Second Statement does not concern Parekh. (Doc. 19, pp. 8–13).

The gravamen of Parekh's defamation claim is that Defendants exposed him to hatred, contempt, and ridicule in the community by falsely publishing in the News Report the First Statement regarding the "suspicious" move to Florida and the Second Statement about the nonexistence of Deokaran's doctor. (Doc. 1, p. 4). Parekh argues that

---

[2] "Unpublished opinions are not controlling authority and are persuasive only insofar as their legal analysis warrants." *Bonilla v. Baker Concrete Constr., Inc.*, 487 F.3d 1340, 1345 (11th Cir. 2007).

Defendants published these statements despite him providing "facts showing otherwise." (*Id.* at p. 2).

To state a claim for defamation in Florida, a plaintiff must allege that: "(1) the defendant published a false statement (2) about the plaintiff (3) to a third party and (4) that the falsity of the statement caused injury to the plaintiff." *Valencia v. Citibank Int'l*, 728 So.2d 330, 330 (Fla. 3d DCA 1999). As to the second element, "[i]n order for a cause of action for defamation of a private person to be sustained, . . . the publication must be of and concerning that private person." *See Jones v. Cmty. Newspapers, Inc.*, No. 3:05-cv-240 J16MMH, 2006 WL 2507610, at *3 (M.D. Fla. Aug. 29, 2006), *aff'd*, 223 F. App'x 884 (11th Cir. 2007). To be actionable, the statement must be "specifically directed at the plaintiff." *Rosenblatt v. Baer*, 383 U.S. 75, 81 (1966).

The Second Statement does not concern Parekh or imply any defamatory facts about Parekh. Instead, the Second Statement concerns whether Deokaran falsified the existence of a doctor who worked at Memorial Sloan Kettering Cancer Center. (Doc. 1, p. 4). The statement cannot reasonably be considered to involve Parekh. Therefore, the Second Statement fails to satisfy the second element and cannot provide a basis for a defamation claim.

Parekh also fails to state a viable claim for defamation with respect to the First Statement because it is not reasonably capable of a defamatory meaning. A statement is defamatory "if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Thomas v. Jacksonville Television, Inc.*, 699 So. 2d 800, 803 (Fla. 1st DCA 1997). In an action for defamation, the language used should be interpreted not by "extremes,"

but rather as the "common mind" would normally understand it. *O'Neal v. Tribune Co.*, 176 So. 2d 535, 548 (Fla. 2d DCA 1965). The "'common mind' rule means that a statement should be given a "reasonable construction" and should be considered in "its natural sense without forced or strained construction." *Byrd v. Hustler Magazine, Inc.*, 433 So. 2d 593, 595 (Fla 4th DCA 1983); *Wolfson v. Kirk,* 273 So. 2d 774, 778 (Fla. 4th DCA 1973).

Furthermore, to determine whether a statement is defamatory, the Court must look at the statement in the context of the publication. *Smith v. Cuban Am. Nat'l Found.*, 731 So. 2d 702, 706 (Fla. 3d DCA 1999) (per curiam). The Court must consider all the words and pictures accompanying the publication, rather than considering statements or phrases in isolation. *Id.*; *see also Byrd*, 433 So. 2d at 595 ("Articles are to be considered with their illustrations; pictures are to be viewed with their captions; stories are to be read with their headlines."). In doing so, the Court must consider all the circumstances surrounding the publication and "accord weight to cautionary terms" used by the publishers. *Hay v. Indep. Newspapers, Inc.*, 450 So. 2d 293, 295 (Fla. 2d DCA 1984).

Parekh argues that the First Statement conveys the impression that Parekh knew of and/or participated in Deokaran's fraudulent scheme and then decided to relocate to Florida when the local community "started getting suspicious." (Doc. 29, p. 2 n.1). During his interview, however, Parekh told Defendants that he moved to Florida with Deokaran because Deokaran told him that she only had eighteen months to live and New York was too cold for her. (Doc. 1, ¶ 23). Parekh argues that, despite having this information, Defendants published the First Statement which allegedly "impugn[ed] [Parekh's] honesty, trustworthiness, dependability, and professional fitness" and "charg[ed] him with

engaging in criminal conduct and/or other conduct that would tend to injure [him]." (*Id.* ¶ 35).

The Court finds that the First Statement, as stated in the News Report, is not reasonably capable of a defamatory meaning. As required by the liberal pleading standard for *pro se* plaintiffs, the Court affords leeway to Parekh in alleging a claim for defamation. *Tennyson*, 477 F. App'x at 609–10. However, the First Statement is incapable of supporting a claim for defamation. The Court must consider the First Statement in the context in which it appears within the New Report, and the New Report is replete with statements indicating Parekh was a victim of Deokaran's allegedly fraudulent scheme. *See Smith*, 731 So. 2d at 702. The full sentence containing the First Statement reads, "They suddenly moved to Florida last year when people started getting suspicious, *but Parekh said he now knows the truth and their relationship is over*." (Doc. 19-2, p. 2) (emphasis added). Rather than conveying the impression that Parekh knew about the scheme at the time they moved, the second sentence makes clear that Parekh did not know the truth. Further, on four occasions, the article quotes Parekh's assertions that Deokaran "lied to [him]" and that "[he] had no idea" what she was doing. *Id.* at pp. 1–2. The News Report mentions that police were investigating Parekh, but that statement is followed up with Parekh's denials of wrongdoing. *Id.* at p. 2. Given the larger context, the common mind would not interpret the First Statement to imply that Parekh knew of, or participated in, Deokaran's scheme, and therefore moved to Florida because the community was "suspicious." *See Byrd*, 433 So. 2d at 595; (Doc. 1, p. 4). Instead, the common mind would read the First Statement together with the rest of the article, which portrays Parekh as a victim of Deokaran's scheme. The First Statement thus cannot

sustain a plausible defamation claim. Accordingly, the Court will grant the Motion as to the defamation claim.

### B. Intentional Infliction of Emotional Distress

Defendants also move to dismiss Parekh's IIED claim, arguing that the claim fails as a matter of law because it is based solely on the defamatory statements, which violates Florida's "single action rule." (Doc. 19, p. 6 n.7).

To plead a claim for IIED, a plaintiff must plausibly allege four elements: "(1) defendant acted recklessly or intentionally; (2) defendant's conduct was extreme and outrageous; (3) defendant's conduct caused the plaintiff's emotional distress; and (4) plaintiff's emotional distress was severe." *Santiago v. Boyd Bros. Transp.*, No. 3:13-CV-1288-J-32, 2014 WL 7274122, at *2 (M.D. Fla. Dec. 22, 2014) (citing *Metro. Life Ins. Co. v. McCarson*, 467 So. 2d 277, 278–79 (Fla. 1985)).

Under Florida's single action rule, outrageous conduct supporting a claim for IIED must be separate from, or independent of, the alleged defamation. *See, e.g.*, *Boyles v. Mid-Fla. Television Corp.*, 431 So. 2d 627, 636 (Fla. 5th DCA 1983). The single action rule is meant to prohibit defamation claims from being "re-cast as additional, separate torts, e.g., intentional infliction of emotional distress, if all claims arise from the same defamatory publication." *Kinsman v. Wilson*, No. 6:15-cv-696, 2015 WL 12839267, at *5 (M.D. Fla. Sept. 15, 2015). With respect to Parekh's IIED claim, the "outrageous conduct" he complains of is solely based on the alleged defamatory News Report. (Doc. 1, ¶¶ 44–47.) Parekh "cannot transform a defamation claim into a claim for [IIED] simply by characterizing the alleged defamatory statement as outrageous." *See Fridovich v.*

*Fridovich*, 598 So. 2d 65, 70 (Fla. 1992). Therefore, the Motion is due to be granted as to the IIED claim.

### C. Florida's Anti-SLAPP Statute

Finally, Defendants asserts that Plaintiff's complaint falls within Florida's anti-SLAPP statute and that they should be awarded attorneys' fees and costs incurred in defending it. (Doc. 19, pp. 13–15). The anti-SLAPP statute prohibits anyone from bringing a lawsuit that is "without merit and primarily because such person or entity has exercised the constitutional right of free speech in connection with a public issue." Fla. Stat. § 768.295(3) (emphasis added). This case meets both requirements of Florida's anti-SLAPP law. First, as detailed above, Plaintiff's lawsuit is "without merit." *Id.* Second, this lawsuit arises out of Defendants' exercise of their "constitutional right of free speech in connection with a public issue" because the News Report constitutes a "written or oral statement that is protected under applicable law," and was "made in or in connection with" an "audiovisual work . . . news report, or other similar work. *Id.* § 768.295(2)(a). Under the anti-SLAPP law, an award of reasonable attorneys' fees and costs is mandatory in these circumstances. *See id.* § 768.295(4) ("The Court shall award the prevailing party reasonable attorney fees and costs incurred in connection with a claim that an action was filed in violation of this section."); *see also Boling v. WFTV, LLC*, 2018 Fla. Cir. LEXIS 1860 (Fla. Orange County Ct. Feb. 28, 2018).

### IV. LEAVE TO AMEND

The Court finds that Plaintiff is not entitled leave to amend. Generally, "[a] *pro se* plaintiff, . . . 'must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice,' at least where a more carefully drafted

complaint might state a claim." *Carter v. HSBC Mortg. Servs.*, 622 F. App'x 783, 786 (11th Cir. 2015) (per curiam) (quoting *Bank v. Pitt*, 928 F.2d 1108, 1112 (11th Cir.1991), *overruled in part by Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002) (*en banc*)). However, due to the deficiencies exhibited in Plaintiff's Complaint, amendment would be futile because the underlying facts are incapable of stating a defamation claim. *See Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1014 (11th Cir. 2005) (stating a district court need not allow amendment where amendment would be futile).

## V. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that Defendants' Motion to Dismiss (Doc. 19) is **GRANTED**. The Complaint (Doc. 1) is **DISMISSED WITH PREJUDICE**. The Court retains jurisdiction to determine the proper amount of an award of attorneys' fees and costs. The Clerk of Court is **DIRECTED** to terminate all pending deadlines and close the case.

**DONE AND ORDERED** in Orlando, Florida on January 9, 2019.

_____
PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties